IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JACKIE MYERS and B.W. MYERS,
wife and husband,

    Plaintiffs,

v.                                      Civil Action No. 5:05CV134
                                                (STAMP)
H. JOHN REASON, M.D.,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' EXPERT WITNESS, DAVE DAVID, M.D.**

I.   Background

The above-styled civil action is a medical malpractice case in which the plaintiffs, Jackie and B.W. Myers, assert injuries resulting from the allegedly unnecessary removal of Ms. Myers's ovaries. On November 27, 2006, the defendant, H. John Reason, M.D. ("Dr. Reason"), filed a motion to strike and exclude the plaintiffs' expert witness, Dave David, M.D. ("Dr. David"), because of his alleged failure to meet the requisite competency requirements of the West Virginia Medical Professional Liability Act ("MPLA") and to set forth reliable evidence under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Federal Rule of Evidence 702. The plaintiffs responded and argue that Dr. David is both competent and qualified to testify as an expert witness as to the standard of care in this case under the applicable rules of evidence. Dr. Reason responded.

II. Discussion

A. Competency

First, the defendant seeks to strike and exclude the plaintiffs' medical expert on the grounds that Dr. David's testimony is statutorily barred by the MPLA. The defendant argues that the MPLA applies in this case through Federal Rule of Evidence 601 to prevent Dr. David from testifying regarding the standard of care. The plaintiffs argue, on the other hand, that West Virginia Rule of Evidence 702 provides the substantive rule of law in this case to determine whether a medical expert is competent to testify. The plaintiffs also argue that even if the MPLA applies here, a reasonable interpretation of that statute falls short of excluding Dr. David's testimony. This Court finds that the MPLA governs the issue of expert witness competency in this case and that Dr. David is competent under that statute to testify to the standard of care.

In federal diversity actions, state law governs substantive issues and federal law governs procedural issues. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Because rules of evidence are rules of procedure, the Federal Rules of Evidence, rather than state evidentiary laws, apply to diversity actions. Legg v. Chopra, 286 F.3d 286, 289 (6th Cir. 2002). However, some exceptions exist where state rules that govern the competency of expert witnesses are intimately intertwined with state substantive rules. Id. This relationship often occurs with medical malpractice statutes because expert testimony is usually required to establish the standard of care. Id. The Federal Rules of Evidence resolve this issue by expressly incorporating the Erie mandate into Rule 601 by providing

that where "State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." Fed. R. Evid. 601; Legg, 286 F.3d at 290. Therefore, because the present action arises under the MPLA, the competency requirements of an expert witness testifying to the standard of care must be determined by the MPLA.

West Virginia Code § 55-7B-7, which governs the testimony of expert witnesses on the standard of care, provides that expert testimony may only be admitted in evidence if the expert meets five requirements. The parties do not dispute that Dr. David has met those requirements. The statute further provides that:

> If the witness meets all [five] of these qualifications and devoted, at the time of the medical injury, sixty percent of his or her professional time annually to the active clinical practice in his or her medical field or specialty, or to teaching in his or her medical field or specialty in an accredited university, there shall be a rebuttable presumption that the witness is qualified as an expert.

W. Va. Code § 55-7B-7. The defendant argues that Dr. David fails to meet the requirements of the above-quoted passage and consequently, is not competent to testify to the standard of care.

The defendant overstates the breadth of quoted passage. The statute does not bar an expert from testifying if he or she does not devote sixty percent or more of his or her time to the identified activities. Instead, the statute provides that *if* an expert does devote the requisite sixty percent of his or her time to the identified activities, a rebuttable presumption will arise that the expert is qualified. Thus, if Dr. David did not meet the sixty percent requirement, he would not automatically be deemed incompetent to testify to the standard of care. Rather, the

3

plaintiffs would simply be deprived of the benefit of a rebuttable presumption that Dr. David is qualified as an expert.

Even if the plain language of the statute could be interpreted otherwise, Dr. David does in fact meet the sixty percent requirement. At the time of Ms. Myers's medical injury, Dr. David was employed as an undergraduate professor of Human Anatomy and Physiology at the University of Rhode Island. West Virginia Code § 55-7B-7 expressly provides that "teaching in his or her medical field or specialty in an accredited university" entitles a witness to a rebuttable presumption that he or she is qualified as an expert. In this case, the evidence reveals that Dr. David, at the time of Ms. Myers's injury, devoted sixty percent or more of his time to teaching Human Anatomy and Physiology at an accredited university. This Court does not find it significant that these courses are undergraduate level. Human Anatomy and Physiology are medically based courses which satisfy the requirement of teaching in a "medical field or specialty." Accordingly, this Court finds that Dr. David is competent to testify as an expert witness on the standard of care in this case.

B. <u>Daubert and Federal Rule of Evidence 702</u>

The defendant argues in the alternative that if Dr. David is found competent to testify, his testimony should be excluded under Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). Federal Rule of Evidence 702 provides:

> If a scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education may testify thereto in the form of
an opinion or otherwise.

In Daubert, the Supreme Court held that a trial judge has a special obligation to ensure that scientific testimony is not only relevant, but reliable and that the trial judge must therefore act as a "gatekeeper." In deciding whether or not an expert witness's theory or technique is "scientifically valid," this Court must look to certain factors such as whether the theory or technique can be tested, whether it has been subject to peer review and publication, the rate of error of any such theory or technique, the extent to which controlling standards provide support, and whether the theory or technique has been widely accepted or rejected in the relevant scientific community. See id.

The defendant argues that Dr. David is not qualified to testify as an expert witness because he has not practiced obstetrics or gynecology since 1998 and he has not performed the surgeries that are at issue in this case for over ten years. The defendant contends that these facts make Dr. David's testimony unreliable under Rule 702 and the Daubert inquiry. The role of Daubert, however, is to provide district courts with discretion to close the courtroom door to "junk science." See United States v. Crisp, 324 F.3d 261, 268 (4th Cir. 2003). The reliability prong of the Daubert inquiry goes to the reliability of the science upon which an expert relies, rather than the reliability of the expert. See Bourne ex rel. Bourne v. E.I. Dupont de Nemours & Co., 85 F. Appx. 964, 967 (4th Cir. 2004)(stating that the reliability inquiry under Daubert must focus on the "principles and methodology" employed by the expert). The defendant has failed to present any

5

evidence that the science upon which Dr. David is planning to testify is unreliable "junk science."  Rather, the defendant's qualms with Dr. David's testimony are of the kind that can be remedied by traditional trial tactics such as "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."  <u>Daubert</u>, 509 U.S. at 595.  Consequently, this Court finds that Rule 702 and the <u>Daubert</u> line of cases do not bar Dr. David from providing expert testimony in this case.

## V. <u>Conclusion</u>

For the above-stated reasons, the defendant's motion to strike and exclude the plaintiffs' expert witness, Dave David, M.D., is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     February 12, 2007

<u>/s/ Frederick P. Stamp, Jr.    </u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE